UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAPLAN GROUP INVESTMENTS
LLC, *et al.,*

                              Plaintiffs,                          22-CV-7326 (JPO)

              -v-                                                  OPINION AND ORDER

A.S.A.P. LOGISTICS LTD., *et al.,*
                              Defendants.

J. PAUL OETKEN, District Judge:

        Plaintiff Kaplan Group Investments LLC ("KG") and its affiliates, Exos Funds MRP1

LLC ("Exos"), Cardinal Specialty Credit Fund LLC ("Cardinal"), and M42 Tactical Inc.

("M42") — collectively "Plaintiffs" — bring this action against Defendants A.S.A.P. Logistics

Ltd. ("ASAP"), Deborah Cross ("Cross"), Sharon Sacramone ("Sacramone"), Guven Acarer

("Acarer"), Snooz Mattress LLC ("Snooz"), Octavio Fermin ("Fermin"), Jeimy Pena Fermin

("Pena Fermin"), and ASAP's Turkish affiliate ("ASAP Turkey").  Plaintiffs allege that

Defendants coordinated to sell Plaintiffs faulty goods, such as counterfeit 3M N95 masks and

nitrile gloves.  Plaintiffs assert claims of breach of contract, breach of implied covenant of good

faith and fair dealing, fraud, breach of express warranty, unjust enrichment, and unfair and

deceptive trade practices against Defendants.

        Before the Court are two motions to dismiss by Defendants.  For the reasons that follow,

the motion to dismiss filed by ASAP, Cross, and Sacramone is granted in part and denied in part,

and the motion to dismiss filed by Snooz, Fermin, and Pena Fermin is granted.

I.      **Background**

A.      **Factual Background**

The following facts, drawn from the First Amended Complaint (ECF No. 7), are presumed true for the purposes of resolving Defendants' motions to dismiss.

Plaintiffs are a consortium of investment funds that obtain and re-sell high-value products in large quantities.  (*Id.* ¶ 3.)  Plaintiffs KG, Exos, and Cardinal act as investment funds and are headquartered in Arizona, while Plaintiff M42 is an entity incorporated and headquartered in Florida that deals in rifle and handgun ammunition.  (*Id.* ¶¶ 8-11.)  Defendant ASAP is a customs broker and freight shipping company that specializes in interstate and international shipping services.  (*Id.* ¶ 27.)  ASAP is a Delaware corporation and has its principal place of business in Jamaica, New York.  (*Id.* ¶ 12.)  Defendant Cross resides in New York and is a chief executive of ASAP (*id.* ¶ 13); Defendant Sacramone, Cross's sister, also resides in New York and is a manager at ASAP (*id.* ¶ 14).  Defendant Snooz is a limited liability company formed in New Jersey, both of whose members are domiciled in New Jersey, that acts as a seller of Personal Protective Equipment (PPE).  (*Id.* ¶ 16.)  Defendant Fermin is the principal of Snooz, while Defendant Pena Fermin is the Registered Agent and Member Manager of Snooz.  (*Id.* ¶¶ 17-18.) According to the Plaintiffs' allegations, Fermin "has extensive ties to Cross and ASAP."  (*Id.* ¶ 17.)[1]

Beginning in November 2020, Plaintiffs KG and Exos sought suppliers who could help them fulfill orders from a health care supply company (which would in turn supply a hospital system) for significant quantities of brand 3M Model 1860 N95 masks in a short time frame.  (*Id.*

---

[1] Although Plaintiffs named Acarer and ASAP Turkey as defendants in their First Amended Complaint, Plaintiffs have not served either party, nor has either party entered an appearance.  Accordingly, the Court does not address the claims against those parties.  (*Id.*

¶¶ 35-36.)  Defendant Cross directed Plaintiff Exos to Defendants Snooz and Fermin, and Fermin represented that Snooz could provide Exos with authentic 3M N95 masks in the necessary quantities.  (*Id.* ¶¶ 41-45.)  Pursuant to those representations, Plaintiff Exos wired Defendant Snooz a total of $6,858,500 under five separate invoices for 2,705,000 masks.  (*Id.* ¶¶ 50-56.)  After the hospital system inquired in February 2021 about the authenticity of the N95 masks it received, however, the United States government determined that the masks provided by Snooz were not genuine 3M products and were not manufactured in the United States, contrary to Defendants' representations.  (*Id.* ¶¶ 63-67.)  As a result, Exos refunded the hospital system all of what it had paid for the masks, but Snooz and Fermin refused to provide a refund to Exos.  (*Id.* ¶¶ 68-70.)

In parallel, starting in November 2020, Plaintiffs KG and Exos worked with Defendant ASAP to fill a set of orders for medical grade nitrile gloves to be used as PPE.  (*Id.* ¶ 81.) Defendant ASAP represented that it was the sole United States distributor authorized to import and distribute nitrile gloves from a supplier in China.  (*Id.* ¶¶ 84-85.)  Plaintiffs ordered nitrile gloves from ASAP, with ASAP and Snooz supplying the gloves.  (*See id.* ¶¶ 82, 88.)  Defendant ASAP obtained the gloves from Snooz, cleared the gloves as a customs broker, and then resold them to Exos.  (*Id.* ¶ 94.)  When the gloves reached their destination, the state police department discovered that the gloves were not actually medical nitrile gloves, and that some of them had been used.  (*Id.* ¶ 92.)  Plaintiffs KG and Exos then paid for a legitimate replacement product in place of the defective product, which cost them over $1,900,000.  (*Id.* ¶ 95.)  Defendants Cross and Sacramone claimed that they were victims of Defendant Snooz's fraud, and while Cross accepted a return of the items and agreed to provide Plaintiffs with a partial refund, Plaintiff Exos has not yet received any refund from Defendants.  (*Id.* ¶¶ 98-99, 103.)

Before Plaintiffs had discovered that the nitrile gloves were mislabeled, Plaintiff Cardinal arranged with ASAP to place a separate order for nitrile gloves for a different end customer. (*Id.* ¶ 104.) In December 2020, ASAP provided gloves to Plaintiff Cardinal that were produced by Niujian, a company allegedly formed by ASAP and/or its affiliates. (*Id.* ¶¶ 32, 105.) Niujian invoiced Plaintiff Cardinal for $8,447,500. (*Id.* ¶ 107.) While some of the gloves that were delivered were legitimate, others were defective or counterfeit, and some of the gloves still have yet to be delivered despite Plaintiffs' full payment. (*Id.* ¶¶ 108-10.) Ultimately, Plaintiffs claim $20,262,000 in direct, indirect, and consequential damages arising from their glove transactions with Defendants. (*Id.* ¶ 113.)

Finally, in early 2021, Defendant Cross approached Plaintiff M42, another affiliate of Plaintiff KG, with an offer of a large amount of ammunition at below-market cost. (*Id.* ¶ 118.) Defendant Cross represented that the ammunition had been manufactured by MKE, the leading provider of military products in Turkey and a primary international provider of high-quality ammunition. (*Id.* ¶¶ 122-23.) Plaintiff M42 had an end customer who sought a particular type of MKE-manufactured ammunition that Cross represented she could provide, among other representations. (*Id.* ¶¶ 126, 128-30.) Relying on those representations, Plaintiff M42 took a $47,700,000 purchase order from a customer for 180 million rounds of 9mm ammunition. (*Id.* ¶ 132.) M42 insisted on being able to inspect and verify ammunition before giving Defendant Cross any payment, but Cross refused to allow such inspection. (*Id.* ¶¶ 133, 135-36.) Defendants then began offering their ammunition to other purchasers, including Plaintiff M42's contracted customer, who rescinded its purchase order from M42. (*Id.* ¶¶ 140-41.) Plaintiff M42 claims that it consequently lost $47.7 million in lost gross revenue, $21 million in lost profit, and $150 million in lost market capitalization. (*Id.* ¶ 142.)

B.     **Procedural History**

Plaintiffs initiated this action by filing a Complaint on August 26, 2022.  (ECF No. 1.)
On September 29, 2022, Plaintiffs filed a First Amended Complaint.  (ECF No. 7.)  On February
9, 2023, Defendants Snooz, Fermin, and Pena Fermin (the "Snooz Defendants") filed a motion to
dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, pursuant to
Rules 12(b)(2), 12(b)(3), and 12(b)(6).  (ECF No. 33.)  The Snooz Defendants also filed an
answer on February 15, 2023.  (ECF No. 36.)  On February 17, 2023, ASAP, Cross, and
Sacramone (the "ASAP Defendants") also filed a motion to dismiss for failure to plead fraud
with particularity and for failure to state a claim, pursuant to Rules 9(b) and 12(b)(6).  (ECF No.
38.)  Plaintiffs then filed separate oppositions to the Snooz Defendants' and the ASAP
Defendants' motions to dismiss on March 16 and March 17, 2023, respectively.  (ECF Nos. 47,
48.)  Finally, the ASAP Defendants filed a reply in support of their motion to dismiss on April
21, 2023.  (ECF No. 53.)

II.     **Legal Standards**

A.     **Rule 12(b)(2) Motion**

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of
establishing that the court has jurisdiction over the defendant."  *Grand River Enters. Six Nations,
Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (internal quotation marks and citation omitted).
At this stage, where discovery has not yet commenced, a plaintiff "need only make a prima facie
showing of personal jurisdiction over the defendant."  *Romero v. 88 Acres Foods, Inc.*, 580 F.
Supp. 3d 9, 14 (S.D.N.Y. 2022) (quoting *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122,
126 (2d Cir. 2008)).  This prima facie showing "may be established solely by allegations"
pleaded in good faith.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir.
2013) (per curiam).  Still, the allegations must be more than "conclusory statement[s]" and must

state specific "facts supporting th[e] conclusion" that jurisdiction is proper. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).

Personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  That inquiry involves a two-step analysis.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  First, the court must determine whether personal jurisdiction is appropriate pursuant to the forum's law.  If exercise of jurisdiction is deemed appropriate under New York law, the second step is to evaluate whether the court's exercise of personal jurisdiction comports with the Fifth Amendment's Due Process Clause.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010).

### B.      Rule 12(b)(3) Motion

On a motion to dismiss for improper venue under Rule 12(b)(3), "the burden of proof lies with the plaintiff to show that venue is proper." *Kim v. Lee*, 576 F. Supp. 3d 14, 22 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  If the court has not held an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (brackets omitted) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).  In determining whether the plaintiff has met its burden, courts must view "all facts in the light most favorable to the non-moving party." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

### C.      Rule 12(b)(6) Motion

The party facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In resolving a motion to dismiss, the Court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F. 3d 365, 368 (2d Cir. 2014)).

Plaintiffs alleging fraud claims, as Plaintiffs do here, must satisfy not only Rule 12(b)(6), but also Rule 9(b).  Under that rule, discussed further below, Plaintiffs must "state with particularity the circumstances constituting" the alleged fraud.  Fed. R. Civ. P. 9(b).

## III.   Discussion

Before the Court are the Snooz Defendants' motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, and the ASAP Defendants' motion to dismiss for failure to state a claim and failure to plead fraud with particularity.  The Court begins by addressing the Snooz Defendants' objections based on lack of personal jurisdiction before proceeding to the merits.

### A.   Personal Jurisdiction

A court must first determine that it has personal jurisdiction over defendants before proceeding to the merits of a case.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).  The Snooz Defendants argue that this Court lacks both general and specific jurisdiction over them under N.Y. C.P.L.R. §§ 301 and 302.  On the showing Plaintiffs have made, this Court agrees.

As an initial matter, Plaintiffs argue that the Snooz Defendants waived their ability to object under Rule 12(b)(2) because the Snooz Defendants failed to assert lack of personal

jurisdiction as an affirmative defense in their answer.  (*See* ECF No. 36; ECF No. 47 at 5-6.)

Still, the Snooz Defendants duly made those objections in their motion to dismiss (ECF No. 34),

which preceded their answer.  Plaintiffs do not marshal any authority for the proposition that

waiver occurs in such circumstances, and the Snooz Defendants' motion to dismiss put Plaintiffs

on notice of the nature of their objections.

This Court therefore declines to conclude that the Snooz Defendants waived an objection

grounded in lack of personal jurisdiction and proceeds to evaluate that objection.  Plaintiffs do

not allege that the Snooz Defendants are domiciled in New York, so this Court cannot exercise

general jurisdiction over them under C.P.L.R. § 301.  *See Reed v. Luxury Vacation Home LLC*,

632 F. Supp. 3d 489, 509 (S.D.N.Y. 2022).  New York's long-arm statute, C.P.L.R. § 302(a),

permits a court to exercise specific personal jurisdiction over a non-domiciliary who:

"(1) transacts any business within the state or contracts anywhere to supply goods or services in

the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state

but injures a person or property in the state; or (4) owns, uses, or possesses any real property in

the state."  *Id.* at 509-10 (internal quotation marks and citation omitted).

To begin, Plaintiffs are unclear about which provision of New York's long-arm statute

they invoke to support this Court's exercise of personal jurisdiction over the Snooz Defendants.

Based on Plaintiffs' allegations, it appears that the most relevant provision is C.P.L.R.

§ 302(a)(1), which requires a showing that "(1) [t]he defendant must have transacted business

within the state; and (2) the claim asserted must arise from that business activity."  *Sole Resort,

S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

Plaintiffs have not pleaded those elements, however, as they make no allegations in their

complaint about the Snooz Defendants' business in New York.  To be sure, Plaintiffs observe

that "CPLR 302 is a single-act statute requiring but one transaction — albeit a purposeful transaction — to confer jurisdiction in New York," *State of New York v. Vayu, Inc.*, 39 N.Y.3d 330, 335, 206 N.E.3d 1236 (2023) (internal quotation marks and citation omitted), and they allege that the Snooz Defendants regularly communicated with the New York-domiciled ASAP Defendants (*see* ECF No. 47 at 6-7.)  But outside of those communications, Plaintiffs do not allege a single act that the Snooz Defendants took in New York.  *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.")  Absent any additional allegations that the Snooz Defendants consistently used communications to "actively project" themselves into New York to "avail[] [themselves] of the business privileges and protections of the state," *Wego Chemical & Mineral Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 384 (E.D.N.Y. 2013), Plaintiffs have not met their burden.  And while Plaintiffs assert for the first time in their opposition to the motion to dismiss that some of the allegedly counterfeit products were shipped directly to New York (*see* ECF No. 47 at 7), they do not provide any relevant details sufficient for a showing of jurisdiction.

Because Plaintiffs have not met their burden to show that personal jurisdiction over the Snooz Defendants is proper, this Court does not reach the Snooz Defendants' motion to dismiss on other grounds.

### B.    Failure to State a Claim

Having found no personal jurisdiction over the Snooz Defendants, the Court proceeds to evaluate the ASAP Defendants' motion to dismiss.  Because two of Plaintiffs' asserted causes of action — breach of contract and breach of express warranty, both based on the defective 3M N95

masks — were brought against only the Snooz Defendants, this Court does not reach those claims.

### 1.    Piercing ASAP's Corporate Veil

The ASAP Defendants first argue that Cross and Sacramone cannot be held personally liable for the actions of ASAP, a corporate defendant, because Plaintiffs do not make sufficient allegations to pierce ASAP's corporate veil.  (*See* ECF No. 39 at 8-10.)  New York law generally permits individuals to "incorporate for the very purpose of avoiding personal liability," and courts may pierce the corporate veil and impose personal liability on individual owners only when necessary "to prevent fraud or to achieve equity."  *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) (internal quotation marks and citation omitted).  "[V]eil piercing is a narrow exception to the doctrine of limited liability for corporate entities," and "courts should permit veil-piercing only under 'extraordinary circumstances.'"  *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511-12 (S.D.N.Y. 2005) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).

To pierce the veil under an alter ego theory, a plaintiff must show "(1) that the owner exercised complete domination over the corporation with respect to the transaction at issue," and "(2) that such domination was used to commit a fraud or wrong that injured . . . the party seeking to pierce the veil."  *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 197 (2d Cir. 2005) (summary order) (internal quotation marks and citation omitted).  To satisfy the first prong of domination, courts look to factors such as "the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like; inadequate capitalization; whether funds are put in and taken out of the corporation for personal rather than corporate purposes; and the amount of business discretion displayed by the allegedly dominated corporation."  *Steadfast Ins. Co. v. T.F.*

*Nugent Inc.*, 513 F. Supp. 3d 419, 424 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  The second prong can be "satisfied either upon a showing of fraud or upon complete control . . . that leads to a wrong against third parties."  *Id.* (internal quotation marks and citation omitted).

Plaintiffs do not make sufficient allegations about the first prong for their veil-piercing claims to survive a motion to dismiss.  The standard for veil-piercing is "very demanding such that piercing the corporate veil is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss."  *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).  Here, Plaintiffs provide only conclusory allegations in their complaint.  For example, they allege that the ASAP Defendants and the Snooz Defendants "do not follow corporate formalities but instead act as agents of each other and co-mingle assets and liabilities" (ECF No. 7 ¶ 21), that Cross, Sacramone, Fermin, and Pena Fermin "exercised complete domination over Snooz in all aspects of the mask transaction involving KG and Exos" (*id.* ¶ 75), and that "Cross and Sacramone failed to maintain a formal legal separation between ASAP and their personal financial affairs, thereby rendering the ASAP business entity as the alter ego of Cross and Sacramone" (*id.* ¶ 117).

Because Plaintiffs' statements consist of conclusory allegations devoid of supporting factual detail, this case is distinguishable from others in which plaintiffs have put forth more specific allegations about domination and control.  *See, e.g.*, *Schwartz v. Sensei, LLC*, No. 17-CV-4124, 2020 WL 5817010, at *9 (S.D.N.Y. Sept. 30, 2020) (concluding that the plaintiff had sufficiently pleaded domination and control based on allegations that an individual was an "80% owner of the Company," the company was operated from a "virtual office in Texas where [the

individual] was based," the individual invested $3 million of his own money, and the individual "siphoned money from the company in questionable ways").  Instead, this case resembles those in which courts have rejected attempts by plaintiffs to pierce the corporate veil.  *See, e.g.*, *Indus. Water Sols., LLC v. Ravyn & Robyn Constr., LLC*, 789 F. App'x 920, 921 (2d Cir. 2020) (summary order) (finding veil-piercing claim inadequately pleaded where the "complaint sets out only generalized and conclusory allegations regarding common ownership, employees, management, control, and decision making"); *Wolet Cap. Corp. v. Walmart Inc.*, No. 18-CV-12380, 2021 WL 242297, at *6 (S.D.N.Y. Jan. 25, 2021) (disregarding as "entirely conclusory" allegations that a parent "exercised complete domination and control" over a subsidiary and "control[led] [the subsidiary's] board of directors"); *Chanel, Inc. v. WGACA, LLC*, No. 18-CIV-2253, 2018 WL 4440507, at *5 (S.D.N.Y. Sept. 14, 2018).  And while Plaintiffs lean on the fact that ASAP is run by two sisters as support for their position (ECF No. 48 at 10 & n.4), they cite no authority suggesting that the benefits of the corporate form are unavailable to smaller corporations.  As a result, this Court grants the ASAP Defendants' motion to dismiss claims against Cross and Sacramone for claims related to ASAP's corporate activity.

Still, "under New York law, piercing the corporate veil is not required to hold a corporate officer liable for his company's torts."  *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 163 (S.D.N.Y. 2010).  Under that principle, "a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation."  *Id.* (quoting *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985)).  This Court therefore proceeds to evaluate Plaintiffs' claims against Cross and Sacramone for the two tort claims asserted by Plaintiffs:  Count Four, asserting fraudulent misrepresentation, and Count Eight, asserting unfair and deceptive trade practices under New York law.  With respect to

Plaintiffs' contract and quasi-contract claims, however — specifically, their claims based on breach of contract, breach of implied covenant of good faith and fair dealing, breach of express warranty, and unjust enrichment — the claims against Cross and Sacramone are dismissed.

### 2.    Breach of Contract

Plaintiffs assert a claim of breach of contract against the ASAP Defendants for their sale of nitrile gloves.  (*See* ECF No. 7 ¶¶ 155-63.)  "To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp v. Segui*, 19 F.3d 337, 348 (2d Cir. 1996)).

The ASAP Defendants assert that no valid contract exists because there was no agreement between ASAP and Plaintiffs that ASAP would supply nitrile gloves.  (ECF No. 39 at 11.)  With all plausible inferences drawn in their favor, Plaintiffs sufficiently allege the existence of a contract.  Plaintiffs allege that they worked "directly with ASAP" to contract for delivery of nitrile gloves (ECF No. 7 ¶ 81), and that "ASAP was responsible for inspection, arranging customs clearance, and with at least some of the gloves, for supplying the actual product" (*id.* ¶ 82).  Plaintiffs also allege that "[a]t all times, Snooz *and/or ASAP* had contracted to supply medical grade nitrile gloves."  (*Id.* ¶ 93 (emphasis added).)  Plaintiffs then allege that in a separate transaction, they agreed with Defendants "to obtain medical grade nitrile gloves for another end customer via ASAP" (*id.* ¶ 104), and that some of those "gloves were provided by ASAP to [Plaintiff] Cardinal" (*id.* ¶ 105), suggesting the existence of an agreement between Plaintiffs and ASAP.  Plaintiffs also refer to two separate invoices in which ASAP represented that it would, either as direct supplier or middleman, deliver "genuine medical grade nitrile gloves" in exchange for payment.  (*See id.* ¶¶ 157-58.)  And in the second transaction, Plaintiffs

specifically allege that the contract was for 1,000,000 genuine medical grade nitrile gloves in exchange for $8,447,500.  (*Id.* ¶¶ 107, 158).  By alleging that ASAP promised to deliver medical grade nitrile gloves, but instead delivered latex gloves, Plaintiffs sufficiently "plead[] provisions of the contract upon which the claim is based."  *IGT v. High 5 Games, LLC*, No. 17-CV-9792, 2019 WL 1651608, at *6 (S.D.N.Y. Mar. 29, 2019) (internal quotation marks and citation omitted).

Plaintiffs also sufficiently allege the remaining elements of a breach of contract claim. They allege that they performed their obligations by paying the relevant invoices (*see* ECF No. 7 ¶¶ 103, 110), that the ASAP Defendants breached the contract by failing to deliver medical grade nitrile gloves (*id.* ¶¶ 92, 108), and that they suffered resulting damages because the Defendants failed to reimburse Plaintiffs and because Plaintiffs incurred costs in retrieving and replacing the defective gloves (*id.* ¶¶ 96, 112, 113).  Accordingly, the ASAP Defendants' motion to dismiss Plaintiffs' breach of contract claim is denied.

### 3.   Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs bring two counts of breach of implied covenant of good faith and fair dealing.

First, Plaintiffs assert in Count Three that the ASAP Defendants breached an implied covenant by delivering counterfeit nitrile gloves.  (*Id.* ¶ 168.)  "New York law," however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pleaded." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451-52 (S.D.N.Y. 2014) (citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  Accordingly, "raising both claims in a single complaint is redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair

dealing." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 358 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).

Although an implied covenant claim "can survive a motion to dismiss if it is based on allegations different from those underlying the accompanying breach of contract claim," *id.* (internal quotation marks and citation omitted), Plaintiffs' implied covenant claim in this case is entirely duplicative of their breach of contract claim. Plaintiffs assert that the ASAP Defendants breached the implied covenant of good faith and fair dealing by "selling gloves to Plaintiffs that purported to be genuine medical grade nitrile gloves, but that were instead counterfeit." (ECF No. 7 ¶ 168.) That ground is the very same one that underlies Plaintiffs' breach of contract claim, which asserts that "Defendants breached the contract with Plaintiffs by supplying Plaintiffs with gloves that were counterfeit and that were not genuine medical grade nitrile gloves." (*Id.* ¶ 160.) The Court therefore grants the ASAP Defendants' motion to dismiss Count Three, the first of Plaintiffs' two claims of breach of implied covenant of good faith and fair dealing.

Second, Plaintiffs assert in Count Four that Cross breached an implied covenant by offering "non-existent and/or counterfeit" MKE ammunition and "demanding an initial payment in excess of one million dollars." (*Id.* ¶ 173.) Plaintiffs, however, do not allege the existence of a contract between Plaintiffs and Cross for the provision of ammunition, precluding a claim for breach of an implied covenant. "A cause of action based upon a breach of a covenant of good faith and fair dealing requires a contractual obligation between the parties." *Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). If "no such contract exists," a plaintiff "has failed to state a claim of breach of the implied covenant of good faith against" a defendant. *Id.*; *see also Johnson v. Chesebrough-*

*Ponds, Inc.*, 104 F.3d 355, 1996 WL 734043, at *2 (2d Cir. 1996) (unpublished table opinion) ("As the contracts do not exist, [the defendant] could not have violated implied covenants in them.")

The formation of a contract requires "a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract." *Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (internal quotation marks and citation omitted); *see also Duckett v. Williams*, 86 F. Supp. 3d 268, 272 (S.D.N.Y. 2015). Here, Plaintiffs' allegations do not suggest agreement on the essential terms of a contract. Plaintiffs allege that Cross offered to sell 50,000,000 rounds of MKE 9mm ammunition at 15 cents per round. (ECF No. 7 ¶ 131.) Cross also "pressur[ed] [Plaintiff] M42 to provide a payment of $1,400,000 to secure the MKE ammunition at the price-point and quantities in the [offer]." (*Id.* ¶ 133.) Although Plaintiff M42 generated a purchase order for 50,000,000 rounds of ammunition at the quoted price, M42 simultaneously "refused to provide payment in advance" and "insisted upon being able to inspect and verify the ammunition before any payment would be made." (*Id.* ¶¶ 134-35.) Cross did not agree to that term, and negotiations broke down. (*Id.* ¶¶ 136, 141.)

Cross's representation that M42 would have to provide an upfront payment "to secure the MKE ammunition at the price-point" — which M42 declined to do — suggests that no agreement was ever formed. (*Id.* ¶ 133.) And while Plaintiffs argue that M42's later decision to cancel its purchase order does not necessarily void a contract that M42 entered into (ECF No. 48 at 12-13), Plaintiffs make insufficient allegations to demonstrate that a contract for ammunition was ever formed to begin with, precluding recovery on a contract-based claim. Count Four is therefore also dismissed for failure to state a claim.

### 4.    Fraudulent Misrepresentation

To state a claim of fraud, a plaintiff must show: "1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000).  Under Rule 9(b)'s heightened pleading requirements for fraud claims, in making the aforementioned showing, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

Plaintiffs allege that Defendants made affirmative misrepresentations about the nature of the 3M N95 masks, the nitrile gloves, and the ammunition.  (ECF No. 7 ¶¶ 175-82.)  The Court addresses each basis for a fraudulent misrepresentation claim in turn.

As to the 3M N95 masks, Plaintiffs do not identify any fraudulent statements made by ASAP, Cross, or Sacramone with sufficient particularity to survive a motion to dismiss.  The majority of Plaintiffs' allegations about the mask transactions involve the Snooz Defendants, who Plaintiffs have not shown are subject to this Court's jurisdiction.  Beyond conclusory statements about Cross and Sacramone "exercis[ing] complete domination over Snooz in all aspects of the mask transaction" (*id.* ¶ 75), there is only one allegation about the ASAP Defendants in the context of the 3M N95 masks: that "Cross directed [Plaintiff] Exos, through its agent, to Snooz and Fermin in response to Exos's inquiry about the 3M masks" (*id.* ¶ 41).  That allegation alone is insufficient to sustain a claim of fraud, as it does not allege that Cross made any material misrepresentation and omits any details about that alleged misrepresentation.  *See*

*Schneider v. Pearson Educ., Inc.*, No. 12CIV-6392, 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) ("Plaintiff, however, has failed to specifically identify the 'time, place, speaker, and content' of even one fraudulent statement.")

As to the ammunition, the Court similarly grants the ASAP Defendants' motion to dismiss the claim of fraudulent misrepresentation.  "In New York, damages in fraud causes are limited by the 'out-of-pocket rule,' which provides that plaintiffs in fraud cases may only recover damages for what they lost because of the fraud," which does not include lost profits.  *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  The only damages that Plaintiffs allege with respect to their ammunition-related claims are for "lost gross revenue," "lost profit," and "lost market capitalization" (ECF No. 7 ¶ 142), none of which constitute out-of-pocket injuries.

As to the nitrile gloves, this Court grants the ASAP Defendants' motion to dismiss that claim of fraud with respect to ASAP, while denying it as to Cross and Sacramone.  "New York law generally requires that a fraud claim raised in the context of a contract dispute be 'sufficiently distinct from the breach of contract claim.'"  *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 162 (E.D.N.Y. 2012) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).  Plaintiffs' fraud claim is premised upon ASAP's misrepresentation about whether Plaintiffs would receive the goods they contracted for, rendering the "fraud claim . . . subject to dismissal as duplicative of the claim for breach of contract."  *Sotheby's, Inc. v. Stone*, 388 F. Supp. 3d 265, 275 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).  Defendants' motion to dismiss Count Five, which asserts fraudulent misrepresentation, is therefore granted with respect to ASAP, against which a breach of contract from Count Two survives.

Defendants' motion to dismiss the claims of fraudulent misrepresentation is denied with respect to Cross and Sacramone, however.  "[A] fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable."  *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017) (emphasis omitted) (quoting *Sun Prods. Corp. v. Bruch*, 507 F. App'x 46, 48 (2d Cir. 2013) (summary order)).  For example, a "plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may assert a fraudulent inducement claim against the president."  *Id.* (internal quotation marks and citation omitted).  So, too, here: Plaintiffs' assertions of fraudulent misrepresentation against Cross and Sacramone can stand separate from their breach of contract claims against ASAP.

Plaintiffs sufficiently allege that Cross and Sacramone materially misrepresented that their gloves were genuine medical nitrile gloves.  Plaintiffs specify that in November and December of 2020, ASAP, Cross, and Sacramone falsely represented that Snooz was the sole United States source of medical nitrile gloves in the quantities that Plaintiffs sought.  (ECF No. 7 ¶ 87.)  While Plaintiffs do not provide proof that the ASAP Defendants knew of the falsity of their statements and that they specifically intended to defraud Plaintiffs, "Rule 9(b) provides that fraudulent intent may be averred generally, as long as the complaint provides a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  Plaintiffs allege enough facts in this case — such as the ASAP Defendants' repeated provision of defective products, their unwillingness to reimburse Plaintiffs, their affiliation with a purportedly sham organization, and their provision

19

of fake contact information in the course of their business dealings — to support an inference of Defendants' knowledge and intent to defraud.  (*See* ECF No. 7 ¶¶ 85, 92, 99, 102-03, 108.)

Plaintiffs also plead reasonable reliance and damages.  On reasonable reliance, the ASAP Defendants' only argument to the contrary is that as of early 2021, Plaintiffs should have known from their experiences with Defendants that Defendants' representations were unreliable.  (ECF No. 39 at 18-19.)  Regardless of the merits of that defense, Defendants' argument applies to only statements that Defendants made from that point onwards, whereas Plaintiffs allege that they worked with the ASAP Defendants to procure gloves in November and December of 2020. (ECF No. 7 ¶ 81.)  On damages, Plaintiffs allege that they suffered over $1,900,000 in out-of-pocket damages to "both retrieve the counterfeit gloves and to replace them."  (*Id.* ¶ 96.)

Plaintiffs have done enough to allege fraud, even under Rule 9(b)'s heightened standard, as they have given Defendants "fair notice" of the content of their claims.  *SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, No. 13-CV-4645, 2014 WL 5026153, at *3 (S.D.N.Y. Sept. 29, 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F3d 87, 99 (2d Cir. 2007)).  As a result, this Court denies the ASAP Defendants' motion to dismiss the fraudulent misrepresentation claims with respect to Cross and Sacramone, due to their involvement in the sale of nitrile gloves.

### 5.      Breach of Express Warranty

To establish a breach of express warranty under New York law, a plaintiff must show "(1) a material statement constituting a warranty, (2) the buyer's reliance on this warranty as a basis for their purchase, (3) breach of the warranty and (4) injury to the buyer caused by the breach."  *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 362 (S.D.N.Y. 2022).  An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  *Id.* (quoting N.Y. U.C.C. § 2-313(1)(a)).

20

Plaintiffs sufficiently allege a breach of express warranty claim against ASAP for the sale of nitrile gloves.  First, Plaintiffs allege a material statement constituting a warranty.  "ASAP represented that they were the sole United States distributor authorized to import and distribute nitrile gloves" from a particular supplier, that "ASAP . . . informed" Plaintiff Exos that Snooz was "the sole United States source of medical grade nitrile gloves in the quantities sought by" Plaintiffs, and that "ASAP had both cleared the gloves as a customs broker and obtained them directly from Snooz . . . before reselling them to Exos."  (ECF No. 7 ¶¶ 84, 87, 94.)  In certain invoices, Plaintiffs assert, "Snooz and ASAP expressly warranted by affirmation of fact, and/or a description of the goods that the gloves were genuine nitrile gloves."  (*Id.* ¶ 194.)

"[N]o formal wording is necessary to create an express warranty," and "a representation of fact or specific promise about the product" — here, that Defendants could and would supply Plaintiffs with genuine products due to their unique relationships with suppliers — is sufficient to create such a warranty.  *See Brodie v. Green Spot Foods,* LLC, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020).  Plaintiffs also allege reliance on that warranty, as they represent that "[w]ithout this affirmation of fact by Defendants" — *i.e.,* that the forthcoming gloves would be genuine medical nitrile gloves — "Plaintiffs would not have entered into the contracts."  (*Id.* ¶ 195.)  Plaintiffs finally allege a breach of that warranty (*see id.* ¶¶ 92, 108, 196), and they suffered resulting damages (*id.* ¶¶ 96, 113, 198).

Defendants argue that ASAP was not the seller of the goods but rather that Snooz was the seller and the only party that allegedly made an express warranty.  (ECF No. 39 at 14-15.)  But the complaint contains allegations that ASAP was significantly involved in the sales of the gloves.  Plaintiffs allege that "ASAP was responsible . . . for supplying the actual product" with respect to some of the gloves (ECF No. 7 ¶ 82), and that Plaintiff "Exos made its payment to

ASAP directly" (*id.* ¶ 90), supporting an inference that ASAP indeed acted as a seller. Moreover, in the context of similar claims against manufacturers, "the New York Court of Appeals has dispensed with the requirement of privity in cases involving breach of an express warranty" in cases in which "only economic damages are alleged," on the theory that the manufacturer intends and expects that the product will be used in reliance upon its assurance of quality. *Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 2022 WL 17363585, at *5 (S.D.N.Y. 2022). Similarly, here, as the seller and provider of some of the nitrile gloves, ASAP made representations through the invoices about the products that Plaintiffs would receive. *See Donald v. Shinn Fu Co. of Am.*, No. 99-CV-6397, 2002 WL 32068351, at *5 (E.D.N.Y. Sept. 4, 2002) (explaining that "if a supplier makes an express warranty as to a certain condition . . . the purchaser can sue for a breach of that warranty" if the "plaintiff can show that the express warranty was part of the bargained-for agreement").

Defendants also argue that Plaintiffs' breach of express warranty claim is duplicative of their breach of contract claim, but "a plaintiff is not required to elect the breach of express warranty theory over the breach of contract theory" at the motion to dismiss stage. *Price v. L'Oréal USA, Inc.*, No. 17-CIV-0614, 2017 WL 4480887, at *4 (S.D.N.Y. Oct. 5, 2017) (citing *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 314 (S.D.N.Y. 2007)). Thus, there is no "rule under New York law that breach-of-contract and breach-of-express-warranty claims cannot stand together, and courts in this District have permitted the two to proceed together." *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, No. 16-CV-4254, 2017 WL 5905574, at *13 (S.D.N.Y. Nov. 29, 2017). Defendants' motion to dismiss Plaintiffs' breach of express warranty claims is therefore denied.

### 6.      Unjust Enrichment

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001). Plaintiffs allege the elements of an unjust enrichment claim against ASAP, as they allege that they directly paid ASAP for the gloves (ECF No. 7 ¶¶ 89-90) and that they received no money in return, even after the gloves were revealed not to be medical nitrile gloves (*id.* ¶¶ 97, 103, 110, 112).

The ASAP Defendants again argue that Plaintiffs' unjust enrichment claim is duplicative of their contract claim. (ECF No. 39 at 15.) "However, even though Plaintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative." *Transcience*, 50 F. Supp. 3d at 452; *see also* Fed. R. Civ. P. 8(a) (allowing pleading in the alternative). The ASAP Defendants also argue that there are no concrete allegations that Plaintiffs paid the Defendants or that Defendants kept the money (*see* ECF No. 39 at 16), but Plaintiffs' allegations are accepted as true at this stage, and Plaintiffs make precisely those allegations (ECF No. 7 ¶¶ 97, 103, 110, 112).

### 7.      Unfair and Deceptive Trade Practices

To state a claim under New York General Business Law § 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "On its face, Section 349 prohibits only '[d]eceptive acts or practices . . . *in this state*.'" *In re AXA Equitable Life Ins. Co. COI Litig.*,

595 F. Supp. 3d 196, 241 (S.D.N.Y. 2022) (quoting N.Y. Gen. Bus. Law § 349).  Thus, "[c]onsistent with that plain language, the New York Court of Appeals has held that, to prove a Section 349 claim, 'the transaction in which the consumer is deceived must occur in New York.'"  *Id.* (quoting *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (2002)).

This Court grants the ASAP Defendants' motion to dismiss Plaintiffs' claim of unfair and deceptive trade practices under Section 349 because Plaintiffs do not allege that any of the relevant activity occurred in New York.  At most, Plaintiffs allege that the ASAP Defendants are domiciled in New York.  (ECF No. 7 ¶¶ 12-14.)  But a party's "citizenship or residency does not affect where a transaction occurs" for purposes of Section 349.  *Reynolds*, 136 F. Supp. 3d at 519 (quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012)); *see also Goshen*, 98 N.Y.2d at 325, 774 N.E.2d at 1196 (explaining that New York's "General Business Law analysis does not turn on the residency of the parties").  Plaintiffs do not plead enough details about New York-based transactions for their Section 349 claim to survive a motion to dismiss.

## IV.   Conclusion

For the foregoing reasons, the Snooz Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

The ASAP Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, the ASAP Defendants' motion to dismiss is granted with respect to Cross and Sacramone on all claims except as to the fraudulent misrepresentation claim, and is granted with respect to ASAP on the claims asserting breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, and unfair and deceptive trade practices.  Conversely, the ASAP Defendants' motion to dismiss is denied with respect to Cross and Sacramone on the

fraudulent misrepresentation claim, and is also denied with respect to ASAP for the breach of contract, breach of express warranty, and unjust enrichment claims.

The ASAP Defendants shall file an answer to the surviving claims within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motions at Docket Numbers 33 and 38.  The Clerk of Court is also directed to terminate Defendants Snooz Mattress LLC, Octavio Fermin, and Jeimy Pena Fermin as parties in this case.

SO ORDERED.

Dated:  September 25, 2023
        New York, New York

_____
                    J. PAUL OETKEN
               United States District Judge